IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KAREEM BROWN,** | **Case No. 1:12-cv-01787 AWI MJS (HC)** |
| Petitioner, | **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| **AMY MILLER,** | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Charles French of the office of the California Attorney General.

## I.    PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on April 1, 2008, of assault with a deadly weapon by a life inmate upon a correctional officer by means of force likely to produce great bodily injury with an enhancement for inflicting great bodily injury. (Clerk's Tr. at 1196-97.) On June 13, 2008, Petitioner was sentenced to an indeterminate term of 21 years to life to be served consecutively to the sentence of 20 years to life that Petitioner was already serving. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District on March 2, 2009. (Lodged Docs. 1-4.) The appeal was denied on November 5, 2009. (Id.) On December 11, 2009, Petitioner filed a petition for review with the California Supreme Court. (Lodged Doc. 5.) The petition was summarily denied on January 13, 2010. (Lodged Doc. 6.)

Petitioner filed a habeas petition with the Fifth District Court of Appeal on July 13, 2010. (Lodged Doc. 8.) The petition was denied without prejudice on March 7, 2011 for failing to exhaust remedies in the superior court. (Lodged Doc. 11.) On April 8, 2011, Petitioner filed a petition for writ of habeas corpus with the Kern County Superior Court. (Lodged Doc. 7.) The petition was denied on April 25, 2011. (Lodged Doc. 10.) Finally, Petitioner filed a habeas petition with the California Supreme Court on July 2, 2012. (Lodged Doc. 9.) The petition was denied as untimely October 17, 2012. (Lodged Doc. 12.)

Petitioner filed his federal habeas petition on November 1, 2012. (Pet., ECF No. 1.) The petition raised eight different claims for relief, listed as follows:

1.) That appellate counsel was ineffective for failing to raise claims that the state destroyed exculpatory evidence, that there was insufficient evidence of Petitioner's intent to commit the crime, that the trial court failed to instruct the jury on Petitioner's theory of provocation, and that the trial court abused its discretion in failing to admit evidence of the victim's bad acts;

2.) That the trial court admitted inflammatory and prejudicial photos of the victim, violating Petitioner's due process;

3.) That the state violated Petitioner's due process in failing to obtain a defense witness in federal custody; and

4.) Cumulative error.

(Pet. at 4-8, ECF No. 1.)

Respondent filed an answer to the petition on March 11, 2013. (Answer, ECF No. 15.) Petitioner filed a traverse on July 29, 2013. (ECF No. 26.) The matter stands ready

2

1   for adjudication.

2   **II.   STATEMENT OF THE FACTS[1]**

3           First, we turn to the evidence at trial. Michael Lippert, a correctional
        officer at California Correctional Institution in Tehachapi (CCI), called
4       Craig Terry, a correctional officer working the control room at CCI, to let
        him know which inmates to let out for doctor's appointments. One was
5       Brown's cellmate, whom Terry so informed on the public address system.
        After giving him time to get ready, Terry opened the cell door, but Brown
6       stepped out instead. On the public address system, Terry ordered him to
        return to his cell, but he did not, so Terry called Lippert and told him,
7       "Brown was out on the tier and would not return to his cell."

8           From downstairs, Lippert "repeatedly asked [Brown] to lock up," but
        his response was "negative." Brown, "quite agitated," started "swearing" at
9       Lippert. Watching Lippert and Brown talk to each other, Terry saw Brown
        "throw his arms up in like a defiant manner, like he was refusing a direct
10      order." On the public address system, Terry ordered Brown "to return to
        his cell" four or five times, but he did not comply. Lippert walked upstairs
11      to "order him to lock up" and pointed his pepper spray at him "in case [he]
        needed to use it."
12
            Once he was upstairs, Lippert saw Brown facing him in "a bladed
13      stance, slightly skewed from facing you straight on, one foot slightly in
        front of the other. And his arms were down to his sides, slightly bent," and
14      his fists were "clenched" in a fighting stance. Lippert fired his pepper
        spray. Brown charged him and struck "three to four heavy blows" to his
15      head. Lippert lost consciousness.

16          From the control room, Terry saw Brown "striking [Lippert] about
        the face and chest" a total of about 10 times, some before he fell, some
17      after he fell. After Lippert fell, Brown straddled him and kept striking him in
        the face until a rubber bullet Terry fired hit him in the lower back. Brown
18      immediately stopped the assault and, after glancing behind him, looked at
        Terry in the control room and ran back into his cell.
19
            Testifying in his own defense, Brown acknowledged leaving his cell
20      and not going back inside even after Lippert "continued to give [him] direct
        orders to go back into the cell." The prison was on lockdown, racial wars
21      were in progress, and he was concerned for his and his cellmate's safety.
        Brown told Lippert he would go back into his cell as soon as his cellmate
22      left the cell. Lippert told him he needed to lock up or his cellmate would
        not see the doctor. Brown told Lippert he did not care if his cellmate saw
23      the doctor. Saying he would spray Brown and lock him up if he did not lock
        up voluntarily, Lippert "pointed his pepper spray" at him, "took a defensive
24      stance," and again told him to lock up. Brown again told Lippert he would
        go back into his cell as soon as his cellmate left the cell. Lippert pepper
25      sprayed him. Brown "automatically respond[ed] in self-defense," striking
        him "four to five times" "real hard" "with clenched fists." After Lippert lost
26

27      [1]The Fifth District Court of Appeal's summary of the facts in its November 5, 2009 opinion is presumed
        correct. 28 U.S.C. § 2254(e)(1).

28

consciousness and fell, Brown did not touch him again. He never got on top of him.

People v. Brown, 2009 Cal. App. Unpub. LEXIS 8845, 3-6 (Cal. App. 5th Dist. Nov. 5, 2009).

## II.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.   Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

1   28 U.S.C. § 2254(d).

2                    1.   Contrary to or an Unreasonable Application of Federal Law

3           A state court decision is "contrary to" federal law if it "applies a rule that

4   contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

5   that are materially indistinguishable from" a Supreme Court case, yet reaches a different

6   result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

7   "AEDPA does not require state and federal courts to wait for some nearly identical

8   factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

9   even a general standard may be applied in an unreasonable manner" Panetti v.

10  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).   The

11  "clearly established Federal law" requirement "does not demand more than a 'principle'

12  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).   For a state

13  decision to be an unreasonable application of clearly established federal law under §

14  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

15  (or principles) to the issue before the state court.   Lockyer v. Andrade, 538 U.S. 63, 70-

16  71 (2003).   A state court decision will involve an "unreasonable application of" federal

17  law only if it is "objectively unreasonable."   Id. at 75-76, quoting Williams, 529 U.S. at

18  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

19  Court further stresses that "an *unreasonable* application of federal law is different from

20  an *incorrect* application of federal law."   131 S. Ct. 770, 785 (2011), (citing Williams, 529

21  U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

22  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

23  correctness of the state court's decision."   Id. at 786 (citing Yarborough v. Alvarado, 541

24  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

25  have in reading outcomes in case-by-case determinations."   Id.; Renico v. Lett, 130 S.

26  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

27  Federal law for a state court to decline to apply a specific legal rule that has not been

28  squarely established by this Court."   Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

1   (2009), quoted by <u>Richter</u>, 131 S. Ct. at 786.

2               2.   <u>Review of State Decisions</u>

3        "Where there has been one reasoned state judgment rejecting a federal claim,

4   later unexplained orders upholding that judgment or rejecting the claim rest on the same

5   grounds."  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This is referred to as the

6   "look through" presumption.  <u>Id.</u> at 804; <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198

7   (9th Cir. 2006).   Determining  whether  a  state  court's  decision  resulted  from  an

8   unreasonable legal or factual conclusion, "does not require that there be an opinion from

9   the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

10  "Where a state court's decision is unaccompanied by an explanation, the habeas

11  petitioner's burden still must be met by showing there was no reasonable basis for the

12  state court to deny relief."  <u>Id.</u> ("This Court now holds and reconfirms that § 2254(d) does

13  not require a state court to give reasons before its decision can be deemed to have been

14  'adjudicated on the merits.'").

15       <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

16  or merely a summary denial, the approach to evaluating unreasonableness under §

17  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

18  or theories supported or, as here, could have supported, the state court's decision; then

19  it must ask whether it is possible fairminded jurists could disagree that those arguments

20  or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

21  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

22  was unreasonable."  <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

23  authority to issue the writ in cases where there is no possibility fairminded jurists could

24  disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put

25  it yet another way:

26            As a condition for obtaining habeas corpus relief from a federal
          court, a state prisoner must show that the state court's ruling on the claim
27        being presented in federal court was so lacking in justification that there
          was an error well understood and comprehended in existing law beyond
28        any possibility for fairminded disagreement.

1    Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

2    are the principal forum for asserting constitutional challenges to state convictions." Id. at

3    787. It follows from this consideration that § 2254(d) "complements the exhaustion

4    requirement and the doctrine of procedural bar to ensure that state proceedings are the

5    central process, not just a preliminary step for later federal habeas proceedings."  Id.

6    (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

7                    3.      Prejudicial Impact of Constitutional Error

8            The prejudicial impact of any constitutional error is assessed by asking whether

9    the error had "a substantial and injurious effect or influence in determining the jury's

10   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

11   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

12   state court recognized the error and reviewed it for harmlessness).  Some constitutional

13   errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

14   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

15   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

16   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

17   Strickland prejudice standard is applied and courts do not engage in a separate analysis

18   applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

19   v. Lamarque, 555 F.3d at 834.

20   **III.     REVIEW OF PETITION**

21          **A.      Claim One: Ineffective Assistance of Counsel**

22          In his first claim, Petitioner contends that appellate counsel was ineffective for

23   failing to raise several issues on appeal. (See Pet. at 4-7.)

24                    1.      State Court Decision

25          Petitioner first presented this claim by way of a petition for writ of habeas corpus

26   to the California Court of Appeal, Fifth Appellate District. (Lodged Doc. 8.) The court

27   denied the petition without prejudice for Petitioner's failure to properly exhaust the claim

28   in the superior court. (Lodged Doc. 11.) Petitioner returned to the Kern County Superior

Court, filed a petition for writ of habeas corpus, and the superior court denied it in a reasoned decision. (Lodged Docs. 7, 10.) Petitioner then filed a petition for writ of habeas corpus with the California Supreme Court. (Lodged Doc. 9.) The court denied the petition with citations to In re Robbins, 18 Cal.4th 770, 780 (1998) and In re Clark, 5 Cal.4th 750, 767-769 (1993), indicating that the petition was untimely filed. See Walker v. Martin, 131 S. Ct. 1120, 1124 (2011). While the State court's denial of the claims on procedural grounds generally gives rise to a procedural bar that would foreclose this Court's review of Petitioner's claim, procedural default is an affirmative defense that Respondent was obligated to raise and preserve. See Trest v. Cain, 522 U.S. 87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

As Respondent did not plead that these claims are barred by procedural default, the Court finds this defense has been waived. See Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) (noting that affirmative defenses, such as procedural default, should be raised in the first responsive pleading in order to avoid waiver).

Here, where the last state court decision did not address the merits of the petition, the court, under § 2254(d), must determine what arguments or theories could have supported, the state court's decision and determine whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786. Because the California Supreme Court's opinion denied the claims on alternative procedural grounds, this Court shall review the decision of the superior court for its persuasive authority.

In denying Petitioner's claim, the Kern County Superior Court explained:

> Petitioner claims that his appellate counsel was ineffective for failing to raise the following issues: A. the jury failed to receive instructions on provocation; B. the state failed to prove malice beyond a reasonable doubt; C. the state deliberately destroyed a shirt worn during the struggle with Officer Lippert, and the prosecution was a party to such destruction; D. the trial court erred in not admitting prior bad acts of Officer Lippert; E. the trial court failed to ensure compulsory process by ordering the removal of Wesley Stanley from federal custody; F. The court erred in admitting photographs of Officer Lippert's medical condition; G. there was juror

misconduct somewhere since a guilty finding occurred on the last day that a juror was allegedly to be paid by her employer.

The court finds no merit in these claims and denies the petition for writ of habeas corpus. The crimes occurred October 14, 2004 at California Correctional Institute in Tehachapi. According to the appellate opinion, petitioner's cellmate had a medical appointment. When the cell door was opened, petitioner came outside instead of his cellmate.

Petitioner was ordered to return to his cell but did not. He assumed an aggressive stance. The officer sprayed him with pepper spray. Petitioner struck Officer Lippert several times on the head knocking him unconscious. Petitioner straddled the officer, beating him until he was subdued. Petitioner raised self-defense as well as provocation by the officer, but the jury did not find his defense credible. Petitioner alluded to racial tensions and modified programming based upon lockdowns. He contends that Officer Lippert had a history of animus against African/American inmates.

At the outset, the standard for appellate counsel is very similar to trial counsel regarding ineffective representation. Petitioner must show that counsel's conduct fell below professional norms causing prejudice, the absence of which would result in a different outcome. Strickland v. Washington (1984) 466 U.S. 668, 694. Petitioner contends that the evidence his appellate counsel failed to present would have resulted in an acquittal or reduction in culpability. Appellate counsel is not required to raise every conceivable claim in the appeal, jettisoning unmeritorious claims. In re Robbins (1998) 18 Cal.4th 770, 810, 812, Knowles v. Mirzayance (2009) 556 U.S. 173.

Petitioner presents numerous letters addressed to Richard Power, but fails to provide return correspondence for the court to evaluate. It is petitioner's responsibility to provide complete but not selective documentation enabling the court to ascertain whether there is a viable claim for review. People v. Duvall (1995) 9 Cal.4th 464, 474. The return correspondence would provide the court with a glimpse of the rationale appellate counsel used in his decision making. The court is left with the documents petitioner provides and the criminal file to arrive at a decision.

There are no trial transcripts provided by petitioner, or any in the criminal file. Petitioner contends that the jury received erroneous instructions on provocation. The [a]ppellate court found otherwise. The appellate court found that petitioner and the prosecution agreed on CALJIC 5.17 regarding self defense and imperfect self defense which applied to the facts in the case.

The facts do not show any provocation on the part of Officer Lippert, nor are there any facts showing that petitioner acted in a heat of passion characteristic of voluntary manslaughter. In fact, petitioner chose to disobey Officer Lippert's orders along with the control tower announcement for petitioner to return to his cell. He assumed an aggressive stance and continued pummeling Officer Lippert after Officer Lippert lost consciousness. Petitioner admits that his counsel raised this claim on appeal. He cites People v. St. Martins (1970) 1 Cal.3d 524 as authority that appellate counsel's analysis fell short. The court held that where there is evidence of provocation, the trial court has a duty to instruct

the jury on provocation, where there is corroborating evidence. People v. St. Martins (1970) 1 Cal.3d 524, 532. Other decisions held that where there is one adequate jury instruction covering possible defenses, failure to issue another competing jury instruction is harmless error since the jurors are not confused. People v. Canaday (1972) 8 Cal.3d 379, 389.

The cited authority does not apply since the facts do not support the defense of provocation as mentioned above. The jury instruction given covered self-defense and imperfect self-defense, which presupposes provocation and reduced culpability where petitioner used unreasonable force. Petitioner presents no declarations or witness testimony to bolster his claim of self-defense or provocation. Inmate Stanley, who allegedly could have testified that [O]fficer Lippert had animus against African American inmates, does not appear to have witnessed the incident. The petitioner provides numerous rules violations in which Officer Lippert was involved, but there is no evidence of their disposition or how they involved petitioner. The jury believed the prosecution, and the appellate court concurred, that petitioner failed to obey orders when told to return to his cell. He grew angrier and assaulted the officer after the officer used reasonable force to subdue him. To put it even more plainly, when ordered to return to his cell, petitioner did not cease his actions until [O]fficer Lippert was gravely injured. Where the appellate court adversely ruled against petitioner, he cannot raise this matter again in habeas corpus especially here under the guise of ineffective assistance of counsel. In re Waltreus (1965) 62 Cal.2d 218, 225.

Petitioner next contends that the state deliberately destroyed the shirt he wore on the day of the incident, and prosecutors failed to turn it over during discovery. Now that the trial is over, petitioner's only remedy would be post-conviction discovery embodied in P.C. Section 1054.9. The shirt was taken to the evidence locker. The prosecutor attempted to obtain the shirt, but it was nowhere to be found.

Petitioner contends that he wanted an expert to opine whether there was blood on the shirt supporting his claim of self-defense. Petitioner contends that Officer Manuel Vasquez deliberately destroyed the shirt due to the amount of pepper spray. Officer Vasquez allegedly changed his story offering a memo May 4, 2007 stating that it had been inadvertently destroyed. He further stated that the evidence was sent to the laboratory at the request of the District Attorney but failed to return. The prosecution can only turn over evidence that is in its possession even if the evidence is not material and exculpatory. Harmon v. Superior Court (2010) 50 Cal.4th 890, 894, In re Steel (2004) 32 Cal.4th 682, 695-696.

It is impossible to say whether the missing shirt would affect the outcome one way or the other. There is no dispute that petitioner received pepper spray, and the shirt was covered with it. There may be even blood on the shirt. However, the facts remain that Officer Lippert received serious injuries resulting from the application of unreasonable force by petitioner inflicting blows long after the officer lost consciousness. While the prosecution must turn over exculpatory evidence to comport with due process and discovery statutes, Brady v. Maryland (1963) 373 U.S. 83, Trombetta v. California (1984) 467 U.S. 479, 486, the state need not turn over evidence lost or destroyed in good faith. Trombetta 489.

The court finds no error by either the trial court or prosecution.

Petitioner's argument that the state failed to prove beyond guilt a reasonable doubt (sic) is erroneous. Petitioner contends that there is insufficient evidence to sustain the verdict. Sufficiency of the evidence claims are not cognizable in habeas corpus. In re Lindley (1947) 29 Cal.2d 709, 723. Moreover, the jury verdict speaks for itself in that the prosecution was able to prove all the elements of assault on an officer by a prisoner with malice aforethought. Malice can be either express or implied. This means that petitioner intended to assault the officer or did so knowing the risks of infliction of bodily harm or did so with an abandoned and malignant heart. People v. Jeter (2005) 125 Cal.App.4th 1212, 1216.

From the facts, petitioner knew his continual disobedience of an order could lead to the officer taking reasonable means to subdue him. He seized this opportunity to inflict serious harm on Officer Lippert knowing full well that [O]fficer Lippert lost consciousness. There is more than ample evidence to sustain the jury verdict including the element of malice. Petitioner's next argument revolves around [the] trial court's failure to admit or exclude evidence.

Petitioner contends that the trial court erred in permitting the prosecution to admit a prior conviction for second degree murder. Official records such as the prior conviction, guilty pleas, appellate opinion are useable to prove the prior conviction. There is no doubt that petitioner was convicted for second degree murder in Los Angeles County. People v. Guerrero (1988) 44 Cal.3d 343. There is nothing to suggest that the prosecution went beyond the record, which is forbidden. People v. Trujillo (2006) 40 Cal.4th 165, 180. The record can include the entire court file. People v. Castellanos (1990) 219 Cal.App.3[d] 1163, 1172.

Petitioner took the stand, and thus assumed the risk that the murder conviction could be used as impeachment. People v. Brown (1963) 222 Cal.App.2d 739, 741.

It is understandable why the prosecution would not stipulate to a prior felony conviction given the facts of the case, but sought to impeach petitioner with the prior murder conviction which was also alleged in the accusatory pleading. Petitioner also contends that it was prejudicial to admit photographs of Officer Lippert's injuries. The trial court may exclude evidence which results in prejudice, undue delay or be a waste of time.

However, given the extent of Officer Lippert's injuries, evidence of such injuries is highly relevant not only to bolster the prosecution case but to rebut any defense claim of self-defense. The purpose of the photographs was to assist the jury. People v. Logan (1953) 41 Cal.2d 279, 285. Photographs are also usable to show victim's credibility. People v. Radial (1977) 76 Cal.App.3d 702, 710 (burglary and fear of daughter). Here, petitioner refused to stipulate to great bodily harm, and continued to adhere to his theory of self-defense. Petitioner finally contends that the trial judge abused his discretion in refusal to admit Officer Lippert's prior bad acts. Petitioner wanted to show that Officer Lippert had racial animus against African American prisoners. He presents as an exhibit a list of rules violations in which Officer Lippert allegedly played a role. However, such evidence is hearsay and not admissible.

Petitioner presented no evidence of the disposition of these rules

violations, nor had anyone on the stand to authenticate what may be an official record. He provides no information about the outcome of these rules violations. He also presents no witness declarations with this petition to bolster his claim of racial animus. Petitioner contends that the court erred in refusing to permit the removal of Wesley Stanley from federal prison. He cites a habeas corpus purportedly filed with this court which Hon. Lee Felice allegedly refused to sign. There is no record of any such petition filed with this court.

This court has no jurisdiction to order the federal courts to produce a witness. Petitioner would have to file a writ or request in federal court to remove Mr. Stanley. Admissibility of evidence is not within the scope of habeas corpus. <u>People v. Harris</u> (1993) 5 Cal.4th 813, 826.

(Lodged Doc. 10.)

2.     <u>Law Applicable to Ineffective Assistance of Counsel Claims</u>

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Harrington v. Richter</u>, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," <u>Strickland</u>, 466 U.S. at 694. Petitioner must show that counsel's errors were so

1    egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

2    The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

3    because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

4    States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

5         A court need not determine whether counsel's performance was deficient before

6    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

7    Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

8    deficiency that does not result in prejudice must necessarily fail. However, there are

9    certain instances which are legally presumed to result in prejudice, e.g., where there has

10   been an actual or constructive denial of the assistance of counsel or where the State has

11   interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

12   and n.25 (1984).

13        As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

14   standard for ineffective assistance of counsel in federal habeas is extremely difficult:

15            The pivotal question is whether the state court's application of the
16       Strickland standard was unreasonable. This is different from asking
         whether defense counsel's performance fell below Strickland's standard.
17       Were that the inquiry, the analysis would be no different than if, for
         example, this Court were adjudicating a Strickland claim on direct review
18       of a criminal conviction in a United States district court. Under AEDPA,
         though, it is a necessary premise that the two questions are different. For
19       purposes of § 2254(d)(1), "an unreasonable application of federal law is
         different from an incorrect application of federal law." Williams, supra, at
20       410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
         deference and latitude that are not in operation when the case involves
21       review under the Strickland standard itself.

22            A state court's determination that a claim lacks merit precludes
         federal habeas relief so long as "fairminded jurists could disagree" on the
23       correctness of the state court's decision. Yarborough v. Alvarado, 541
         U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
24       Court has explained, "[E]valuating whether a rule application was
         unreasonable requires considering the rule's specificity. The more general
25       the rule, the more leeway courts have in reaching outcomes in case-by-
         case determinations." Ibid. "[I]t is not an unreasonable application of
26       clearly established Federal law for a state court to decline to apply a
         specific legal rule that has not been squarely established by this Court."
27       Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
         2d 251, 261 (2009) (internal quotation marks omitted).

28   Harrington v. Richter, 131 S. Ct. at 785-86.

1    "It bears repeating that even a strong case for relief does not mean the state

2    court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

3    2254(d) stops short of imposing a complete bar on federal court relitigation of claims

4    already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

5    from a federal court, a state prisoner must show that the state court's ruling on the claim

6    being presented in federal court was so lacking in justification that there was an error

7    well understood and comprehended in existing law beyond any possibility for fairminded

8    disagreement." Id. at 786-87.

9         Here, Petitioner claims ineffective assistance of appellate counsel. The Due

10   Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

11   effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S.

12   387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of ineffective assistance

13   of appellate counsel are reviewed according to the standard set out in Strickland v.

14   Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Smith v. Robbins,

15   528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Moormann v. Ryan, 628

16   F.3d 1102, 1106 (9th Cir. 2010). The petitioner must show that counsel's performance

17   was objectively unreasonable, which in the appellate context requires the petitioner to

18   demonstrate that counsel acted unreasonably in failing to discover and brief a merit-

19   worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at 1106. The petitioner also

20   must show prejudice, which in this context requires the petitioner to demonstrate a

21   reasonable probability that, but for appellate counsel's failure to raise the issue, the

22   petitioner would have prevailed in his appeal. Smith, 528 U.S. at 285-86; Moormann,

23   628 F.3d at 1106.

24        Accordingly, even if Petitioner presents a strong case of ineffective assistance of

25   counsel, this Court may only grant relief if no fairminded jurist could agree on the

26   correctness of the state court decision.

27             3.    Analysis

28        Petitioner presents four claims of ineffective assistance of appellate counsel. The

1    Court shall address each in turn.

2                         a.    Destruction of Exculpatory Evidence

3           Petitioner asserts that his undershirt that he was wearing during the confrontation

4    was destroyed prior to trial. Petitioner asserts that the destruction of the evidence

5    prevented him from determining if there was blood splatter on the shirt, and therefore

6    denied him the ability to present a complete defense. (Pet. at 6.)

7           The state court determined that as the shirt was destroyed it was not possible to

8    determine if it would have assisted in Petitioner's defense. However, as described by

9    Petitioner's appellate counsel, the jury heard that the shirt was destroyed (because it

10   was still emanating strong pepper spray fumes), and the prosecution stipulated to the

11   fact that the only blood on the shirt was that of Petitioner and not Officer Lippert.

12   (Traverse at 65-66.) While Petitioner argued that the blood splatter evidence would show

13   that he did not mount Officer Lippert during the fight, counsel contends that there was no

14   evidence to support that theory, and that the prosecution stipulated to evidence in his

15   favor. (Id.) The superior court agreed with appellate counsel. Despite any evidence

16   presented by the shirt, the Court noted that there was no prejudice  because the "facts

17   remain that Officer Lippert received serious injuries resulting from the application of

18   unreasonable force by petitioner inflicting blows long after the officer lost

19   consciousness." (Lodged Doc. 10.) The Court agrees with the conclusions of counsel

20   and the superior court. Petitioner has not shown that counsel's performance was

21   objectively unreasonable in failing to present this issue on appeal, and not has he shown

22   that there was a reasonable probability that the claim would have prevailed on appeal.

23   Smith, 528 U.S. at 285-86; Moormann, 628 F.3d at 1106. Accordingly, Petitioner is not

24   entitled to relief with regard to his first claim of ineffective assistance of appellate

25   counsel.

26                         b.    Insufficient Evidence of Petitioner's Intent

27          Next, Petitioner asserts that counsel was ineffective for not presenting claims that

28   he lacked the requisite malice required for the offense. The Fourteenth Amendment's

1   Due Process Clause guarantees that a criminal defendant may be convicted only by

2   proof beyond a reasonable doubt of every fact necessary to constitute the charged

3   crime. Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560

4   (1979). Under the Jackson standard, "the relevant question is whether, after viewing the

5   evidence in the light most favorable to the prosecution, *any* rational trier of fact could

6   have found the essential elements of the crime beyond a reasonable doubt." Jackson,

7   443 U.S. at 319 (emphasis in original).

8        In applying the Jackson standard, the federal court must refer to the substantive

9   elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.

10   A federal court sitting in habeas review is "bound to accept a state court's interpretation

11   of state law, except in the highly unusual case in which the interpretation is clearly

12   untenable and amounts to a subterfuge to avoid federal review of a constitutional

13   violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

14        Petitioner asserts that there was insufficient evidence to support finding that he

15   had the requisite malice.  The Court of Appeal denied the claim, explaining:

16            From the facts, petitioner knew his continual disobedience of an
     order could lead to the officer taking reasonable means to subdue him. He
17            seized this opportunity to inflict serious harm on Officer Lippert knowing
     full well that [O]fficer Lippert lost consciousness. There is more than ample
18            evidence to sustain the jury verdict including the element of malice.

19   (Lodged Doc. 10.)

20        The Court agrees that Petitioner's claim is without merit. Any rational trier

21   of fact could, based on the evidence presented of Petitioner's assault on Officer Lippert,

22   find that the act was committed with malice. Prosecution witnesses testified that

23   Petitioner continued to strike the victim after he was on the ground, and therefore any

24   argument that Petitioner acted in self-defense was without merit. Petitioner has not

25   shown that counsel's performance was objectively unreasonable in failing to present this

26   issue on appeal, and not has he shown that there was a reasonable probability that the

27   claim would have prevailed on appeal. Smith, 528 U.S. at 285-86; Moormann, 628 F.3d

28   at 1106. Accordingly, Petitioner is not entitled to relief with regard to his second claim of

1    ineffective assistance of appellate counsel.

2                    c.        Provocation Jury Instruction

3         Petitioner next asserts that appellate counsel was ineffective for presenting a

4    claim based on the trial court denying Petitioner the right to present an instruction

5    regarding a provocation defense.  However, appellate counsel did present such a claim,

6    which was denied in a reasoned decision by the appellate court. Accordingly, Petitioner's

7    claim for ineffective assistance of appellate counsel is denied. Construing Petitioner's

8    claims liberally, the Court shall review the claim as a challenge to failure to instruct the

9    jury on provocation. The state Court held:

10        1. Provocation Instruction

11             Brown argues that the court's denial of his request for a provocation
12        instruction was prejudicial error.  The Attorney General argues the
          contrary.

13             First, we turn to the evidence at trial. Michael Lippert, a correctional
14        officer at California Correctional Institution in Tehachapi (CCI), called
          Craig Terry, a correctional officer working the control room at CCI, to let
15        him know which inmates to let out for doctor's appointments. One was
          Brown's cellmate, whom Terry so informed on the public address system.
16        After giving him time to get ready, Terry opened the cell door, but Brown
          stepped out instead. On the public address system, Terry ordered him to
17        return to his cell, but he did not, so Terry called Lippert and told him,
          "Brown was out on the tier and would not return to his cell."

18             From downstairs, Lippert "repeatedly asked [Brown] to lock up," but
19        his response was "negative." Brown, "quite agitated," started "swearing" at
          Lippert. Watching Lippert and Brown talk to each other, Terry saw Brown
20        "throw his arms up in like a defiant manner, like he was refusing a direct
          order." On the public address system, Terry ordered Brown "to return to
21        his cell" four or five times, but he did not comply. Lippert walked upstairs
          to "order him to lock up" and pointed his pepper spray at him "in case [he]
22        needed to use it."

23             Once he was upstairs, Lippert saw Brown facing him in "a bladed
          stance, slightly skewed from facing you straight on, one foot slightly in
24        front of the other. And his arms were down to his sides, slightly bent," and
          his fists were "clenched" in a fighting stance. Lippert fired his pepper
25        spray. Brown charged him and struck "three to four heavy blows" to his
          head. Lippert lost consciousness.

26             From the control room, Terry saw Brown "striking [Lippert] about
          the face and chest" a total of about 10 times, some before he fell, some
27        after he fell. After Lippert fell, Brown straddled him and kept striking him in
          the face until a rubber bullet Terry fired hit him in the lower back. Brown
28        immediately stopped the assault and, after glancing behind him, looked at

                                              17

Terry in the control room and ran back into his cell.

Testifying in his own defense, Brown acknowledged leaving his cell and not going back inside even after Lippert "continued to give [him] direct orders to go back into the cell." The prison was on lockdown, racial wars were in progress, and he was concerned for his and his cellmate's safety. Brown told Lippert he would go back into his cell as soon as his cellmate left the cell. Lippert told him he needed to lock up or his cellmate would not see the doctor. Brown told Lippert he did not care if his cellmate saw the doctor. Saying he would spray Brown and lock him up if he did not lock up voluntarily, Lippert "pointed his pepper spray" at him, "took a defensive stance," and again told him to lock up. Brown again told Lippert he would go back into his cell as soon as his cellmate left the cell. Lippert pepper sprayed him. Brown "automatically respond[ed] in self-defense," striking him "four to five times" "real hard" "with clenched fists." After Lippert lost consciousness and fell, Brown did not touch him again. He never got on top of him.

Next, we turn to the instructions. During the instructional colloquy, Brown requested modification of CALJIC No. 8.42 ("Sudden Quarrel or Heat of Passion and Provocation Explained") to help the jury understand the concept of provocation. The prosecutor, on the other hand, asked the court to modify CALJIC No. 5.17 ("Actual but Unreasonable Belief in Necessity to Defend -- Manslaughter") to explain to the jury how malice aforethought can be negated by proof of sufficient provocation or actual but unreasonable self-defense in a non-homicide case. The court observed that the use note to CALJIC No. 7.35 ("Assault by Life Prisoner with a Deadly Weapon or by Means of Force Likely to Produce Great Bodily Injury with Malice Aforethought") states that "CALJIC [No.] 5.17 *or* [CALJIC Nos.] 8.42 through 8.44" can be modified "to show how malice aforethought can be negated." (Italics added.) CALJIC No. 5.17, the prosecutor argued, was "more on point with the facts."

Noting that "there is no evidence to support a sudden quarrel or heat of passion," the court commented, "The evidence in this case that the defense would be arguing to the jury would be the necessity for self-defense. Correct?" Brown replied, "Yes." After a brief dialogue, the court said, "So I don't see this as a sudden quarrel or heat of passion case. [¶] Do you agree, Mr. Brown?" He replied, "Yes." The court observed that "[CALJIC No.] 8.42 goes into more detail about sudden quarrel or heat of passion and provocation" and characterized CALJIC No. 5.17 as "actually the more appropriate instruction to use, because this is an issue of self-defense. And whether it's perfect self-defense or imperfect self-defense, that's your theory. Correct, Mr. Brown?" He replied, "Yes." Working together, the court, the prosecutor, and Brown modified CALJIC No. 5.17 both as to title ("Actual but Unreasonable Belief in Necessity to Defend") and as to text (with the court instructing the jury as follows):"A person who assaults another person in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury assaults unlawfully but does not harbor malice aforethought. This would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief.

"As used in this instruction, an 'imminent' peril means one that is apparent, present, immediate and must be instantly dealt with, or must so appear at the time to the person who assaults.

18

1
2

> "However, this principle is not available, and malice aforethought is not negated, if the defendant by his unlawful or wrongful conduct created the circumstances which legally justified his adversary's use of force."

3
4
5
6
7
8

> Now we turn to the law. The rule is settled that in a criminal case the court must instruct on the general principles of law that are relevant to the evidentiary issues, that are closely and openly connected with the facts before the court, and that are necessary for the jury's understanding of the case. (People v. Breverman (1998) 19 Cal.4th 142, 154; People v. Barton (1995) 12 Cal.4th 186, 195, fn. 4.) The court's analysis of the evidence, engagement in dialogue with the parties about the provocation instruction and the self-defense instruction, and choice of the self-defense instruction with appropriate modification show a careful discharge of the court's duties. The record shows no error.

People v. Brown, 2009 Cal. App. Unpub. LEXIS 8845, 3-9 (Cal. App. Nov. 5, 2009).

9
10
11
12
13
14

This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether [his] conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); 28 U.S.C. § 2241. In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must first conclude that the alleged error was of constitutional magnitude. See California v. Roy, 519 U.S. 2, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must conclude that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Roy, 519 U.S. at 5; Brecht, 507 U.S. at 637. Federal habeas relief is warranted only if the Court, after reviewing the record, has "grave doubt" as to the error's effect. Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). The trial court's error in omitting a jury instruction is less likely to be prejudicial than the trial court's misstatement of the law. Henderson, 431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (habeas petitioner whose claim involves a failure to give a particular instruction bears an especially heavy burden).

To evaluate the effect of jury instructions, the Court must look at the context of the entire trial and overall charge to the jury. Estelle, 502 U.S. at 72; Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988). They may not be judged in artificial isolation. Estelle, 502 U.S. at 72. In addition, a reviewing court's principal constitutional inquiry is whether there is a reasonable likelihood that the jury applied the challenged instructions in a way that violates the Constitution. See id.

While a state is generally free to define the elements of an offense, once the state has defined the elements, due process requires that the jury be instructed on each element and instructed that they must find each element beyond a reasonable doubt. Francis v. Franklin, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); United States v. Perez, 116 F.3d 840, 847 (9th Cir. 1997); Stanton, 146 F.3d at 728.

It necessarily follows, therefore, that constitutional trial error occurs when a jury makes a guilty determination on a charged offense without a finding as to each element of the offense. According to the Supreme Court, a jury instruction that omits an element of the offense constitutes such an error. Neder v. United States, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). However, such an error "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9. Provided that such an error occurred, Petitioner's conviction can only be set aside if the error was not harmless under Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); Neder, 527 U.S. at 15. Under the Chapman harmless error test, it must be determined "beyond a reasonable doubt" whether "the error complained of did not contribute to the verdict obtained." Chapman, 386 U.S. at 24.

Here, Petitioner contends the trial court erred in failing to instruct the jury on provocation as justification for Petitioner's actions. As the trial court noted, the provocation related to a heat of passion defense, and the Court concluded that there were no facts to support such a defense. Instead, the Court found that the case more resembled a self-defense situation and ordered an instruction based such a theory. The

1  Court finds the state court's determination reasonable. There was no actions by the

2  guard that would lend to a provocation based on heat of passion defense. Consequently,

3  the Court finds that the state court's failure to provide the jury instruction did not render

4  Petitioner's trial fundamentally unfair or violate his due process rights. Accordingly, the

5  Court cannot find the rejection of Petitioner's claim that appellate counsel failed to raise

6  the instructional error claim to be unreasonable. See 28 U.S.C. § 2254(d). Petitioner is

7  thus not entitled to federal habeas relief on this claim of ineffective assistance of

8  appellate counsel.

9                    d.       Failure to Admit Evidence of Prior Bad Acts of Victim

10        Petitioner's final ineffective assistance of appellate counsel claim is based on the

11  trial court limiting Petitioner from presenting evidence of reports of Lippert's conduct with

12  other inmates to show that Lippert was racist and tended to escalate violence. Petitioner

13  has attached to his traverse a copy of a complaint filed by another inmate that alleges

14  that Lippert "rudely snatched a chess game" and cards from inmates in retaliation for

15  other inmates smoking in the area. (Traverse, Ex. K.) The complaint requested that

16  Lippert return his cards and provide an apology. (Id.) Petitioner alleges the trial court

17  erroneously denied his Pitchess motion, preventing him from questioning the victim

18  regarding his alleged racial animus, and that appellate counsel failed to raise this issue

19  on appeal.

20        Petitioner raised this claim on direct appeal. In the last reasoned state decision

21  the appellate court denied the claim stating:

22        4. In Camera Discovery Hearings

23              Brown requests, the Attorney General agrees, and we concur that
          we review documents and rulings from five in-camera discovery hearings -
24        - one on January 26, 2006, one on February 1, 2006, two on March 23,
          2006, and one on March 30, 2006 -- to determine whether the court's
25        rulings constituted an abuse of discretion in violation of his right to due
          process. We have conducted the requested review, have applied the
26        relevant law, and have determined that the record shows no error. (See,
          e.g., Brady v. Maryland (1963) 373 U.S. 83; People v. Mooc (2001) 26
27        Cal.4th 1216; Pitchess v. Superior Court (1974) 11 Cal.3d 531.)

28  People v. Brown, 2009 Cal. App. Unpub. LEXIS 8845, 14-15 (Cal. App. 5th Dist. Nov. 5,

1   2009).

2   "A <u>Pitchess</u> motion asks for 'access to records of complaints, or investigations of

3   complaints, or discipline imposed as a result of those investigations' of 'law enforcement

4   and custodial personnel.'" <u>Hernandez v. Holland</u>, 750 F.3d 843, 850, n.7 (9th Cir. 2014)

5   (citation omitted). "The motion must include an affidavit 'showing good cause for the

6   discovery or disclosure sought, setting forth the materiality thereof to the subject matter

7   involved in the pending litigation and stating upon reasonable belief that the

8   governmental agency identified has the records or information from the records.'" <u>Id.</u>

9   (quoting Cal. Evid. Code § 1043(b)(3)). "The materiality prong can be satisfied by

10  general allegations which establish some cause for discovery, but must be 'requested

11  with adequate specificity to preclude the possibility that defendant is engaging in a

12  fishing expedition." <u>Id.</u> (citation and internal quotation marks omitted). "Once good cause

13  is shown, the court then makes an in camera examination of the records to see whether

14  they are relevant to the 'pending litigation,' but with instructions that the court is to take

15  into careful account the 'privacy interests' of the officer." <u>Id.</u> (quoting Cal. Evid. Code §

16  1045). Here, the trial court held a hearing on Petitioner's <u>Pitchess</u> motion on March 23,

17  2006 (<u>See</u> Rept'rs Tr. at 317), and granted the motion in part.

18      Initially, a federal court conducting habeas review is limited to deciding whether a

19  state court decision violates the Constitution, laws or treaties of the United States. 28

20  U.S.C. § 2254(a); <u>Swarthout v. Cooke</u>,      U.S.    , 131 S. Ct. 859, 861 (2011) (per

21  curiam); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Federal habeas corpus relief

22  "does not lie for errors of state law." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990);

23  McGuire, 502 U.S. at 67. Accordingly, to the extent this claim challenges only the trial

24  court's application of state law, or alleges that the trial court abused its discretion, such a

25  claim does not set forth a cognizable ground for habeas corpus relief. <u>See</u> <u>Williams v.</u>

26  <u>Borg</u>, 139 F.3d 737, 740 (9th Cir. 1998) (Federal habeas relief is available "only for

27  constitutional  violation, not for abuse of discretion.").

28      Nevertheless, even though it is a creature of state law, California's Pitchess

1  procedure may implicate a defendant's due process right to receive material exculpatory

2  and impeachment evidence. <u>Harrison v. Lockyer</u>, 316 F.3d 1063, 1065-66 (9th Cir.

3  2003). Yet, even if the Court assumes that Petitioner is attempting to raise a due process

4  challenge to the trial court's denial of his <u>Pitchess</u> motion,[1] Petitioner's claim is without

5  merit since Petitioner has simply not shown that the personnel records in question

6  contained any information that was material to his defense. <u>See</u> <u>Pennsylvania v. Ritchie</u>,

7  480 U.S. 39, 58 n.15 (1987) (A criminal defendant "may not require the trial court to

8  search through" sensitive records "without first establishing a basis for his claim that it

9  contains material evidence."); <u>Harrison</u>, 316 F.3d at 1066 (inmate not denied due

10 process of law when he was denied access to police officer's personnel file when inmate

11 "made no showing that [the officer's] file contained complaints material to his defense");

12 <u>Gutierrez v. Yates</u>, 2008 WL 4217865, *7 (C.D. Cal.) ("[T]he absence of proof that there

13 was any exculpatory evidence to be found in the [police personnel] records is fatal to

14 petitioner's due process claim."), report and recommendation adopted by, 2008 WL

15 427600 (C.D. Cal. 2008). Petitioner elaborates in his traverse that he was not provided

16 an appeal from an inmate Stanley that indicated that Officer Lippert "rudely" confiscated

17 his playing cards and threated to spray Stanley with pepper spray if he did not comply.

18 (Traverse, Ex. 6.) Regardless of the relevancy of the report, the Court finds that any

19 failure to allow the report into evidence, the error was harmless. <u>Chapman</u>, 386 U.S. 18

20 (1967); <u>Neder</u>, 527 U.S. at 15. Under the <u>Chapman</u> harmless error test, it must be

21 determined "beyond a reasonable doubt" whether "the error complained of did not

22 contribute to the verdict obtained." <u>Chapman</u>, 386 U.S. at 24.

23      Here, Petitioner was attempting to use the evidence to show racial animus on

---

24      [1] Since "California's <u>Pitchess</u> procedure is not coextensive with <u>Brady</u>[,] . . . mere allegations of a

25 <u>Pitchess</u> violation do not state a <u>Brady</u> claim." <u>Shaw v. Prosper</u>, 2009 WL 6467033, *5 (C.D. Cal. 2009),
report and recommendation adopted by, 2010 WL 1947671 (C.D. Cal. 2010); <u>see also</u> <u>City of Los Angeles</u>

26 <u>v. Superior Court</u>, 29 Cal. 4th 1, 14 (2002) (<u>Pitchess</u> procedure "allowing defense discovery of certain
officer personnel records creates both a broader and lower threshold for disclosure than does the high

27 court's decision in <u>Brady</u>[.]"); <u>Lopez-Martinez v. Dovey</u>, 2009 WL 863576, *15 (C.D. Cal. 2009) ("If there
was no <u>Brady</u> violation, Petitioner has no federally cognizable claim, regardless of whether the state

28 court's handling of his <u>Pitchess</u> motion was erroneous under state law.").

1   behalf of the Officer Lippert. Nothing in the report shows overt acts premised on race by

2   Officer Lippert. Further, even if Lippert's actions in the playing card incident were

3   improper, Petitioner has not shown beyond a reasonable doubt that the evidence would

4   have swayed the jury into finding that Lippert instigated the confrontation and that

5   Petitioner acted in self defense.

6        Accordingly, the Court finds the state court's denial of this claim of ineffective

7   assistance of counsel reasonable. See 28 U.S.C. § 2254(d). Petitioner is thus not

8   entitled to federal habeas relief on his evidentiary ruling claim.

9        **B.**   **Claim Six[2]: Admitting Photographs of Injuries**

10       Petitioner next contends the trial court violated his due process rights by admitting

11  irrelevant and unduly prejudicial evidence. During trial the prosecutor moved to introduce

12  evidence relating to the injuries suffered by Officer Lippert. Petitioner asserts that the

13  photographs inflamed the jury, and were not relevant because he did not dispute that the

14  altercation occurred or that Lippert suffered the injuries. (See Traverse at 35.)

15       1.   State Court Decision

16       Like Petitioner's first claim for ineffective assistance of appellate counsel, this

17  claim was denied by the California Supreme Court on procedural grounds. (Lodged Doc.

18  9.) The Calfornia Supreme Court denied the petition with citations to In re Robbins, 18

19  Cal.4th 770, 780 (1998) and In re Clark, 5 Cal.4th 750, 767-769 (1993), indicating that

20  the petition was untimely filed. See Walker v. Martin, 131 S. Ct. 1120, 1124 (2011).

21  Where the last state court decision did not address the merits of the petition, the court,

22  under § 2254(d), must determine what arguments or theories could have supported, the

23  state court's decision and determine whether it is possible fairminded jurists could

24  disagree that those arguments or theories are inconsistent with Supreme Court law.

25  Richter, 131 S. Ct. at 786.  Because the California Supreme Court's opinion denied the

26  claims on alternative procedural grounds, this Court shall review the decision of the

27  _____

28      [2] Petitioner labeled his ineffective assistance of appellate counsel claims as claims 1-5 of his petition. Consistent with the petition, the Court shall consider the next claim as claim 6 of the petition.

superior court for its persuasive authority.

In denying Petitioner's claim, the Kern County Superior Court explained:

> Petitioner also contends that it was prejudicial to admit photographs of Officer Lippert's injuries. The trial court may exclude evidence which results in prejudice, undue delay or be a waste of time.
>
> However, given the extent of Officer Lippert's injuries, evidence of such injuries is highly relevant not only to bolster the prosecution case but to rebut any defense claim of self-defense. The purpose of the photographs was to assist the jury. People v. Logan (1953) 41 Cal.2d 279, 285. Photographs are also usable to show victim's credibility. People v. Radial (1977) 76 Cal.App.3d 702, 710 (burglary and fear of daughter). Here, petitioner refused to stipulate to great bodily harm, and continued to adhere to his theory of self-defense.

(Lodged Doc. 10.)

### 3.   Analysis

To the extent that Petitioner contends that the photographic injuries of the victim's injuries should have been excluded pursuant to California state evidentiary law, his claim fails because habeas corpus will not lie to correct errors in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

With respect to Petitioner's due process claim, the United States Supreme Court has held that habeas corpus relief should be granted where constitutional errors have rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however, that admission of irrelevant or overly prejudicial evidence can constitute a due process violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." (citation omitted)).

1    Even assuming that improper admission of evidence under some circumstances

2    rises to the level of a due process violation warranting habeas corpus relief under

3    AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

4    precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

5    as to violate due process only if "there are *no* permissible inferences the jury may draw

6    from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir. 1998) (emphasis

7    in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

8    also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

9    heavy burden in showing a due process violation based on an evidentiary decision.").

10   There are permissible inferences the jury could have drawn from the photographs,

11   specifically that the scope of the injuries refute Petitioner's claim that he acted in self-

12   defense. Petitioner's trial was not rendered fundamentally unfair in violation of due

13   process based on admission of the photographic evidence.

14   In any event, the admission of the challenged evidence did not deny Petitioner a

15   fair trial. After a review of the record, this Court finds that the trial court's admission of

16   the photographs would not have had a "substantial and injurious effect" on the verdict.

17   Brecht, 507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-96, 121 S. Ct.

18   1910, 150 L. Ed. 2d 9 (2001). Here, there was overwhelming evidence of Petitioner's

19   guilt, based on the testimony of several witnesses. In light of the evidence as a whole,

20   there is no reasonable probability the verdict would have been different if the evidence

21   had been excluded. Petitioner is not entitled to federal habeas corpus relief on claim six.

22   **C.     Claim Seven: The State Prevented Attendance of Witness**

23   In his seventh claim, Petitioner asserts that his due process was violated by the

24   court limiting his ability to call a witness that was in federal custody.

25   1.     State Court Decision

26   Like Petitioner's first and sixth claims, this claim was denied by the California

27   Supreme Court on procedural grounds. (Lodged Doc. 9.) Because the California

28   Supreme Court's opinion denied the claims on alternative procedural grounds, this Court

1    shall review the decision of the superior court for its persuasive authority.

2          In denying Petitioner's claim, the Kern County Superior Court explained:

3              Petitioner contends that the court erred in refusing to permit the
       removal of Wesley Stanley from federal prison. He cites a habeas corpus
4      purportedly filed with this court which Hon. Lee Felice allegedly refused to
       sign. There is no record of any such petition filed with this court.
5
6              This court has no jurisdiction to order the federal courts to produce
       a witness. Petitioner would have to file a writ or request in federal court to
7      remove Mr. Stanley. Admissibility of evidence is not within the scope of
       habeas corpus. <u>People v. Harris</u> (1993) 5 Cal.4th 813, 826.

8    (Lodged Doc. 10.)

9                          3.    <u>Analysis</u>

10         Respondent asserts that there is no evidence in the appellate record that

11   Petitioner requested the witness from federal custody. Moreover, the state court, in

12   reviewing the claim, reached the same conclusion. (<u>See</u> Lodged Doc. 10.) Petitioner

13   provides no evidence in his petition or traverse that the request for the witness was

14   denied. As Petitioner has not presented evidence to support his claim, the claim lacks

15   merit.

16         Regardless, even if the witness was improperly denied, Petitioner has not shown

17   that he prejudiced by the denial. The witness was to be presented to describe the

18   actions of Officer Lippert, in an attempt to show that he was racist and had a propensity

19   of escalating violence. Petitioner attempted to present this evidence to support his claim

20   that his actions were either provoked or made in self-defense. However, the evidence

21   shows that Lippert was attempting to administer pepper spray on Petitioner based on his

22   failure to follow orders. The officer's actions appeared to be warranted and authorized in

23   light of Petitioner's conduct.

24         Accordingly, the failure to allow Petitioner to present a peripheral witness in

25   support of his defense did not deny Petitioner a fair trial. After a review of the record, this

26   Court finds that the omission of the witness testimony would not have had a "substantial

27   and injurious effect" on the verdict. <u>Brecht</u>, 507 U.S. at 623. In light of the evidence as a

28   whole, there is no reasonable probability the verdict would have been different if the

1   evidence had been presented. Petitioner is not entitled to federal habeas corpus relief on

2   claim seven.

3       **D.    Claim Eight – Cumulative Error**

4       In his final claim for relief, Petitioner argues that the cumulative effect of the errors

5   at his trial violated his right to due process and a fair trial.

6       The Ninth Circuit has concluded that under clearly established United States

7   Supreme Court precedent, the combined effect of multiple trial errors may give rise to a

8   due process violation if it renders a trial fundamentally unfair, even where each error

9   considered individually would not require reversal. Parle v. Runnels, 505 F.3d 922, 927

10  (9th Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and

11  Chambers v. Mississippi, 410 U.S. 284, 290 (1973)). See also Hayes v. Ayers, 632 F.3d

12  500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no

13  cumulative prejudice is possible"). "The fundamental question in determining whether the

14  combined effect of trial errors violated a defendant's due process rights is whether the

15  errors rendered the criminal defense 'far less persuasive,' Chambers, 410 U.S. at 294,

16  and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

17  Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

18      This Court has addressed each of Petitioner's claims raised in the instant petition

19  and has concluded that no error of constitutional magnitude occurred at his trial in state

20  court. This Court also concludes that the errors alleged by Petitioner, even when

21  considered together, did not render his defense "far less persuasive," nor did they have

22  a "substantial and injurious effect or influence on the jury's verdict." Petitioner is not

23  entitled to relief on his claim of cumulative error.

24  **IV.    RECOMMENDATION**

25      Accordingly, it is hereby recommended that the petition for a writ of habeas

26  corpus be DENIED with prejudice.

27      This Findings and Recommendation is submitted to the assigned District Judge,

28  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   August 31, 2014                    /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE